UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                                                    Chapter 11

MADDD West 38 LLC,                                          Case No. 16-45836 (CEC)

                                            Debtor.
-----------------------------------------------------------x

## AMENDED DISCLOSURE STATEMENT PURSUANT TO
## SECTION 1125 OF THE BANKRUPTCY CODE

MADDD West 38 LLC (the "Debtor") hereby submits this Amended Disclosure Statement (the "Disclosure Statement"), pursuant to §1125 of Title 11, United States Code (the "Bankruptcy Code"), in connection with the Debtor's Chapter 11 Plan of Reorganization of the same date (the "Plan"). Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term of the Plan.

### I.  OVERVIEW

**A.  OVERVIEW OF THE PLAN**

The Debtor is currently the purchaser under a certain contract of sale, as amended (the "Contract"), with 402 West 38th Street Corp (the "Seller"), to acquire the real property at 402 West 38th Street, New York, NY (the "Property") for a total purchase price of $33,450,000 including prior deposits of $9.5 million (the "Purchase Price"). A copy of the Contract, together with the last extension through December 29, 2016, are collectively annexed as Exhibit "A" to the Plan.

The Debtor sought Chapter 11 relief because it required a further extension of the time to close under the Contract beyond the last scheduled closing date of December 29, 2016. In bankruptcy, the Debtor intends to proceed with the Contract and close on the purchase of the

Property (the "Acquisition") no later than February 27, 2017 utilizing the benefit of the sixty (60) day extension period provided by §108(b)(1) of the Bankruptcy Code.

The prior delay to a closing in December has been resolved. Shortly after commencement of the Chapter 11 case, a zoning subdivision involving an adjoining property was obtained. This now allows the Debtor and its lender to proceed towards a closing without any further impediments other than Bankruptcy Court approval of these transactions.

Accordingly, the centerpiece of the Plan is the formal assumption of the Contract pursuant to Section 365(a) of the Bankruptcy Code. This will enable the Debtor to close the transaction (the "Closing") utilizing an Exit Facility to be provided by a third-party, arms' length mortgage lender, G4 18168 LLC (hereinafter the "Take-Out Lender"). The Take-Out Lender is affiliated with G4 Capital Bridge LLC, represented by Cole Schotz P.C. The Exit Facility will be memorialized in Loan Documents to be provided and filed as a supplement to this Disclosure Statement no later than February 10, 2017. In the meantime, copy of the mortgage note is annexed hereto as <u>Exhibit</u> "A" so creditors review the core financial terms of the Exit Facility. The term of the Exit Facility is an initial period of eighteen (18) months, subject to an extension of six (6) months. The interest rate under the notice is 8.25% for the initial term. While the Debtor is utilizing mortgage financing to close, the Contract does not otherwise provide a financing contingency.

The Closing shall occur promptly after confirmation of the Plan, which is scheduled for February 15, 2017 at 3:00 p.m. Because the sale and relating mortgage is being done in furtherance of a confirmed plan, the Debtor, the Seller and the Take-Out Lender are eligible for certain transfer tax

and mortgage tax exemptions under §1146(a) of the Bankruptcy Code.  At the Closing, all other allowed claims shall be paid in full or reserves established for any disputed claims.

### B. APPROVAL OF THIS DISCLOSURE STATEMENT

Given the narrow 60 day window under Section 108(b) (1) of the Bankruptcy Code, the Debtor is seeking the final approval of a Disclosure Statement and confirmation of the Plan simultaneously at a combined hearing on February 15, 2017 at 3:00 p.m.  Accordingly, pursuant to §105(d)(2)(B) of the Bankruptcy Code, this Disclosure Statement has been conditionally approved by the Bankruptcy Court for purpose of §1125 of the Bankruptcy Code.  Final approval of the Disclosure Statement will be sought by the Debtor in conjunction with actual confirmation of the Plan on February 15, 2017.  The Court's preliminary approval of the Disclosure Statement is conditional, and does not constitute final approval of the Disclosure Statement.  Indeed, all creditors have the right to object to final approval of the Disclosure Statement, as well as the right to object to the Plan itself.

### C. VOTING/OBJECTIONS

Because the Plan provides for full payment on account of all allowed claims at the Closing, no creditors are impaired and voting is not required.  Thus, the necessity for a disclosure statement is no automatic.  However, creditor input is always important, and ballots for voting are being sent to creditors so creditors can weigh-in on the Plan if they so choose.  Likewise, creditors may also object to confirmation of the Plan, or to final approval of the Disclosure Statement, by filing a written objection with the Clerk of the Bankruptcy Court, through the Court's ECF System and serving same upon (i) Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, attention: Kevin J. Nash, Esq.; and (ii)

Office of the US Trustee, 201 Varick St., Ste. 1006, New York, NY 10014, Attn: William Curtin, Esq.; so as to be received on or before February 13, 2017 at 5:00 p.m., prevailing New York time.

**D.  CONFIRMATION OF THE PLAN**

The Bankruptcy Court has scheduled a combined hearing to consider both final approval of this Disclosure Statement and confirmation of the Plan on the same day and time, to wit, February 15, 2017 at 3:00 p.m., Eastern Standard Time.  The hearing will be conducted by the Hon. Carla E. Craig, United States Bankruptcy Court, 271-C Cadman Plaza East, Courtroom 3529, Brooklyn, NY 11201.

At the combined hearing, the Bankruptcy Court will determine whether the requirements of Section 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court may enter an order finally approving the Disclosure Statement and confirming the Plan. The Debtor believes that the Plan will satisfy all applicable requirements of Section 1129(a) of the Bankruptcy Code.  Confirmation makes the Plan binding upon the Debtor, the Seller and all creditors.

No representations other than those explicitly set forth in this Disclosure Statement are authorized concerning the terms of the Plan or the Debtor's efforts to acquire the Property.  Thus, creditors and other parties in interest should not rely on any information relating to the Debtor or the Plan other than that contained in this Disclosure Statement and any supplements hereto.

**II.   EVENTS LEADING UP TO THE CHAPTER 11 FILING**

The Debtor's need for Chapter 11 arises solely out of unanticipated delays in being able to close on the Contract prior to December 29, 2016.  The Contract was first signed as of March 16, 2016, in conjunction with a relatively large-scale residential and commercial development project.

The original closing date was subsequently extended under a series of amendments, the last of which was executed on November 29, 2017 and extended the closing until December 29, 2016. Under the various amendments to the Contract, the deposit was increased from an initial $2 million to $9.5 million, all of which has been released to the Seller. The Contract and last amendment are annexed to the Plan as Exhibit "A".

The Debtor was working with the Take-Out Lender so as to be in a position to close prior to bankruptcy, including efforts to obtain a requested subdivision involving an adjoining property. Although the Debtor anticipated that the subdivision would be approved shortly after the New Year, the Debtor was unable to obtain a further extension of the December 29 closing deadline from the Seller.

Thus, the Debtor was compelled to seek Chapter 11 relief to prevent a forfeiture of $9.5 million deposit and preserve all of its rights under the Contract pursuant to Section 108(b)(1) of the Bankruptcy Code. As noted above, the subdivision has since been approved; and the parties are again proceeding towards a Closing within the sixty (60) day window of Section 108(b)(1) of the Bankruptcy Code.

The Seller and Take-Out Lender have reviewed the Plan and appear to be in accord concerning the Plan's operative terms. Thus, the Debtor expects that confirmation of the Plan will proceed on a fully consensual basis.

Besides payment of the balance of the purchase price to the Seller, all other allowed claims will be paid in full at Closing. The Closing is deemed the Effective Date for purposes of the Plan. To meet the sixty (60) day deadline, the Closing shall occur no later than February 27, 2017, and likely on or before February 24, 2017.

The Debtor has filed an application for the establishment of February 14, 2017 as the Bar Date for the filing of proofs of claim, and additional notice will be provided to creditors once the Bar Date Order is entered.

### III. THE PLAN

**A. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**1. Summary**

The categories listed below classify Claims against the Debtor for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class | Designation | Impaired |
|---|---|---|
| Class 1 | Allowed Administration Claims | No |
| Class 2 | Allowed Cure Claim of the Seller, if any, arising out of the assumption of the Contract | No |
| Class 3 | Allowed Priority Tax Claims | No |
| Class 4 | Allowed Unsecured Claims | No |
| Class 5 | Equity Interests of the Debtor and Reorganized Debtor | No |

**2. Classification, Treatment and Voting**

**Class 1 – Administration Claims**

All Professionals who are entitled to compensation and reimbursement of expenses pursuant to §§330 and 331 of the Bankruptcy Code shall file written applications for allowance thereof on notice to Creditors and other parties-in-interest. The amounts awarded to Professionals for Professional Fees shall be paid in full on the Effective Date, or, such later time as a particular fee application(s) is heard and ruled upon the Bankruptcy Court. It is anticipated that Debtor's counsel will be the only professional fees incurred, and likely will total approximately $300,000 to cover all bankruptcy related and transactional services.

The holders of any other Administration Claims, including reasonable fees and expenses of the Take-Out Lender, anticipated to be approximately $150,000, shall be paid on the Effective Date of the Plan.

### Class 2 – Cure Claim of the Seller.

The Cure Claim, if any, of the Seller shall be treated and paid in accordance with the provisions of §365(a) of the Bankruptcy Code. To this effect, defaults, if any, under the Contract shall be cured (other than the delay in closing permitted under the statutory extension provided by Section 108(b)(1) of the Bankruptcy Code) on the Effective Date. The Seller is not impaired by the Plan, although the Debtor does not anticipate that any Cure Claim actually exists. If one arises, it will be negotiated or determined by the Bankruptcy Court, with appropriate reserves to be established at Closing in accordance with Section 10.1 of the Plan.

### Class 3 – Priority Claims

All Allowed Priority Claims shall be paid in full on the Effective Date from the proceeds of the Exit Facility.

### Class 4 – General Unsecured Claims

All Allowed Class 4 General Unsecured Claims shall be paid in full on the Effective Date from the proceeds of the Exit Facility.

### Class 5 – Equity Interests

The holder of the Class 5 Equity Interests, 503 Ninth Ave. Bapaz LLC and 485-497 Ninth Ave. Partners LLC shall retain their respective Class A and Class B membership interests in the Debtor pursuant to the company's existing operating agreement.

**B.    IMPLEMENTATION OF THE PLAN**

The Plan is predicated on the Debtor's Acquisition of the Property in accordance with the Contract, using the proceeds of the Exit Facility (as provided by the Take-Out Lender) to close and pay allowed claims. Accordingly, the Contract is deemed assumed for purposes of the Plan pursuant to §§365(a) and §1123(b)(2) of the Bankruptcy Code. A Closing shall take place prior to February 27, 2017[1] unless the Seller agrees to a late date. At the Closing, the Debtor shall cure defaults owed to the Seller, if any, under the Contract (the "Cure Claim") so as to comply with the requirements of 11 U.S.C. §365(a). Notwithstanding the foregoing, the Debtor does not believe any such defaults actually exist. Thus, it is anticipated the Seller shall receive the balance of the Purchase Price at Closing, plus adjustments as permitted by the Contract.

Out of an abundance of caution, the Debtor shall also file a companion motion (the "Assumption Motion") to assume the Contract under §365(a) of the Bankruptcy Code. The Exit Facility of $31.5 million is more than adequate to pay the balance of the Purchase Price at Closing, plus all other Allowed Claims. The balance of the Purchase Price is $23,950,000, and the Debtor has scheduled additional claims in the total sum of $3,627,360 (subject to final review and reconciliation).

The Assumption Motion will be heard contemporaneously with the confirmation process on February 15, 2017 so the Acquisition can proceed even if confirmation is delayed beyond the sixty (60) days extension period under §108(b)(1).

---

[1] February 27, 2017 represents the next business day after to the expiration of the sixty (60) day extension period under 11 U.S.C. §108(b)(1), which falls on a Sunday (February 26, 2017).

To the extent applicable, the Debtor shall seek to have the Confirmation Order and/or the Assumption Order provide, *inter alia*, for the assumption of the Contract by the Debtor with a direction that the Seller is required to convey title to the Property to the Debtor in accordance with the Contract (including, without limitation, the provisions of Section 10.1, as amended by the Ninth Amendment to Real Estate Sale Agreement dated September 19, 2016, and Section 11), and otherwise subject to the Loan Documents, including without limitation, the Take-Out Mortgage granted in favor of the Take-Out Lender.

The Debtor shall also seek to have the respective Orders, including any Order on the Financing Motion, as applicable, provide that they are effective immediately with a waiver of any stays under the Bankruptcy Rules, including under Bankruptcy Rules 3020(e), 4001(a)(3) and 6004(h).

### 1. Debtor's Authority to Proceed With Exit Facility.

The Acquisition of the Property shall be financed in accordance with the Exit Facility and subject to the Loan Documents. The Exit Facility is a first priority senior mortgage loan in the principal amount of up to $31,500,000 to be made and executed by the Take-Out Lender. By the virtue of Confirmation of the Plan and approval of the Financing Motion, the Exit Facility will be approved and the Debtor shall be authorized to borrow up to the sum of $31,500,000 from the Take-Out Lender on terms and conditions set forth in the Loan Documents.

As noted above, the proceeds of the Exit Facility are sufficient to conclude the acquisition and shall be used, subject to the Loan Documents, by the Debtor for the following purposes: (i) to pay the balance of the Purchase Price owed to the Seller under the Contract; (ii) to satisfy all Allowed Claims of Creditors; and (iii) to pay all allowed Professional Fees and U.S. Trustee Fees.

Any surplus proceeds from the Exit Facility shall be retained by the Debtor for working capital requirements to the extent permitted by, and expressly subject to, the Loan Documents.

Also out of an abundance of caution, the Debtor shall file a second companion motion, i.e., the Financing Motion seeking to approve the Loan Documents and related Exit Facility with the Take-Out Lender under §364 of the Bankruptcy Code. The Financing Motion shall also be heard contemporaneously with the confirmation process and shall proceed even if Confirmation is delayed beyond sixty (60) days.

The Take-Out Mortgage and related first priority liens to be granted to the Take-Out Lender shall survive confirmation of the Plan and shall be fully binding and enforceable against the Debtor and Reorganized Debtor as the case may be in accordance with the Loan Documents.

### 2.    Conditions Precedent To Confirmation Of Plan.

This Plan is conditioned upon entry of an order(s) approving assumption of the Contract and the Loan Documents (pursuant to the Financing Motion) and related Exit Facility either before or in conjunction with Confirmation of the Plan.

### 3.    Assumption of Executory Contracts and Agreements.

In connection with the Acquisition of the Property, the Contract is being assumed prior to or at Confirmation.  Any other related executory contracts and agreements relating to the Acquisition pursuant to which the Debtor is a party shall also be assumed in accordance with the provisions of §365(a)

### 4.    Effect of Confirmation.

Any and all persons or entities who or which hold Claims against the Debtor are hereby permanently and forever enjoined from instituting any action or proceeding whatsoever in law or

equity relating to any and all prior transactions involving or relating to the Debtor, the Contract, or the Property.

### 5. Procedure For Resolving Disputed Claims.

The Debtor shall file objections to Claims prior to the Effective Date. In the event that an objection to a Claim remains unresolved as of the Effective Date, the Disbursing Agent shall establish a cash reserve (the "Escrow Fund") in an amount not less than the full sum required to pay, subject to the Loan Documents, the then Disputed Claim in full (together with applicable potential interest) from the Exit Facility loan proceeds at Closing. A Disputed Claim(s) in the event eventually allowed, in whole or part, shall be satisfied from the Escrow Fund. Payments from the Escrow Fund shall be made in the manner approved by the Bankruptcy Court or otherwise agreed to by the parties. Should the Escrow Fund exceed the full amount of a Disputed Claim(s), all excess funds will be returned to the Debtor or Reorganized Debtor as the case may be.

### 6. Exemption For Transfer And Mortgage Tax Exemption.

The Acquisition of the Property and related Exit Facility shall be exempt from the payment of transfer taxes and mortgage recording taxes since the issuance and delivery of a deed to the Debtor and Debtor's execution of the Loan Documents, including the Take-Out Mortgage, in connection with the Exit Facility used to purchase the Property are instruments of transfer in furtherance of, and in connection with, this Plan. Accordingly, these transactions are properly exempt from the payment of all mortgage recording taxes, stamp and deed taxes or similar taxes imposed by the City and State of New York, respectively, pursuant to 11 U.S.C. §1146(a). The

City Register, New York County shall accept a Deed to the Property in favor of the Debtor and the related Take-Out Mortgage, without the necessity of the payment of all such taxes.

       7.      **Retention Of Jurisdiction.**

The Bankruptcy Court shall retain jurisdiction over the Debtor's bankruptcy case, the Contract and Property following confirmation to: (i) to consider or address the following matters: any modification of the Plan under §1127 of the Bankruptcy Code; (ii) to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation or enforcement of the Contract, Plan or otherwise relate to the Property, including without limitation, any disputes regarding the exemptions from mortgage recording taxes, stamp taxes or similar taxes imposed by the City and State of New York granted pursuant to the Plan; (iii) to determine all matters, objections and adversary proceedings that are pending on the Effective Date; (iv) to hear and determine all requests and applications for compensation and/or reimbursement of expenses which may be filed by Professionals; (v) to consider and act on any compromise or settlement of any claims involving the Debtor's estate; (vi) to consider and act on such other matters as may be consistent with the Plan and aid in its implementation; and (vii) to issue such order as may be necessary or appropriate for the consummation of the Plan.

       8.      **United States Trustee Quarterly Fees.**

Pending closing of the case, the Debtor shall file quarterly reports of disbursements made by the Debtor. All fees payable to the Office of the United States Trustee pursuant to 28 U.S.C. §1930, and any applicable interest pursuant to 31 U.S.C. § 3717, shall be paid through entry of a Final Decree, or conversion or dismissal of the Debtor's bankruptcy case, whichever is earlier.

### IV.  EVALUATION OF RISKS

The Debtor submits that the risks to creditors in this Chapter 11 case are very low. The Debtor intends to proceed with the acquisition and has its Exit Facility in place, subject only to obtaining approval from the Bankruptcy Court. The proceeds from the Exit Facility are more than adequate to pay the balance of the purchase price due under the Contract and satisfy all allowed claims of creditors. Accordingly, the Debtor firmly believes that the Plan should qualify for confirmation and that the Exit Facility will be approved. This will enable the Debtors to under the Contract within the sixty day deadline, so allowed creditors can be paid as well.

### V.  BASIC REQUIREMENTS FOR CONFIRMATION OF THE PLAN

Section 1129(a) of the Bankruptcy Code lists a number of findings that need to be made prior to Confirmation. In this case, because the Debtor is paying the holders of allowed claims in full at the Closing on the Contract, the Debtor believes that the Plan meets with all of the requirements of Section 1129(a).

One of the prerequisites to confirmation, found in Section 1129(a)(11) of the Bankruptcy Code, requires that the Debtor demonstrate the ability to close on the sale, fund the Plan, and establish that confirmation is not likely to be followed by the need for further financial reorganization or restructuring. Since the Debtor has more than sufficient financing with the Take-Out Lender in place ($31.5 million), subject to approval by the Court under Section 364 of the Bankruptcy Code, this test is easily met. The total amount necessary to complete the sale transaction (and pay creditors) is approximately $27.5 million ($23,950,000 + $3,627,360), subject to reconciliation of certain claims.

## VI. **CONCLUSION**

The Plan should be confirmed, as the purchase and mortgage transactions contemplated by the Plan hopefully will find unanimous support from all concerned.

Dated: New York, New York
January 26, 2017

| | |
|---|---|
| MADDD West 38 LLC | GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP<br>Attorneys for the Debtor<br>1501 Broadway, 21st Floor<br>New York, NY 10036 |
| By:  /s/ Joseph Noormand, Manager | By: /s/ Kevin J. Nash, Esq. |